UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **TWIN VEE POWERCATS CO.,**<br><br>Plaintiff,<br><br>v.<br><br>**SICHENZIA ROSS FERENCE CARMEL LLP,**<br><br>Defendant. | Civil Action No. __________<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Twin Vee PowerCats Co. ("Twin Vee"), by and through its attorneys, for its Complaint against Defendant Sichenzia Ross Ference Carmel LLP ("SRFC"), alleges as follows:

## NATURE OF THE ACTION

1. This action arises from serious professional negligence committed by Twin Vee's former corporate and securities counsel, SRFC, in connection with Twin Vee's attempted conversion from a Delaware corporation to a Nevada corporation and the corporate, securities, exchange-listing, public reporting, financing, and transactional actions that followed.

2. Twin Vee retained and relied upon SRFC to advise it concerning the legal requirements for converting from Delaware to Nevada, including the stockholder vote required by Delaware law; to prepare legally compliant proxy materials; to determine whether the required stockholder approval had been obtained; to prepare and review governmental (including U.S. Securities and Exchange Commission (SEC)) filings (a) implementing and reporting the attempted conversion and (b) reporting related matters following the attempted conversion; to prepare and advise Twin Vee related to stock exchange (including Nasdaq) inquiries, notice obligations, and other requirements arising following the attempted conversion; and to advise

Twin Vee concerning its corporate status and its authority to undertake subsequent corporate actions.

3. SRFC failed to perform those basic responsibilities with the ordinary and reasonable skill and knowledge required of corporate and securities counsel.

4. At Twin Vee's December 4, 2025 annual meeting of stockholders (the "Annual Meeting"), the attempted Delaware-to-Nevada conversion was subject to Section 266(b) of the Delaware General Corporation Law ("DGCL"), which required approval of a majority of the outstanding shares of stock of Twin Vee entitled to vote thereon.

5. Twin Vee had 2,237,299 shares of common stock outstanding and entitled to vote as of the October 15, 2025 record date for the Annual Meeting. At least 1,118,650 affirmative votes were therefore required to approve the conversion pursuant to DGCL Section 266.

6. Only 437,309 shares of common stock, approximately 19.55% of Twin Vee's outstanding shares of common stock, voted in favor of the proposal, a shortfall of 681,341 shares of common stock.

7. The conversion proposal therefore did not receive the stockholder approval required by Delaware law.

8. SRFC nevertheless advised Twin Vee, or permitted Twin Vee to proceed on the advice and understanding, that the conversion proposal had been approved. Twin Vee's December 8, 2025 Form 8-K, which was drafted or reviewed by SRFC, accordingly reported that Twin Vee's stockholders had "approved" the Nevada reincorporation even while disclosing the vote totals demonstrating that the statutory threshold had not been met.

9. SRFC also prepared, reviewed, approved, and/or permitted the use of proxy materials that misstated the applicable voting requirement. Those materials stated that approval

required a majority of the outstanding shares present virtually or represented by proxy and entitled to vote, rather than the majority of all outstanding shares entitled to vote required by DGCL Section 266(b). Furthermore, SRFC also did not inform Twin Vee that a preliminary proxy statement was required under the SEC rules due to the nature of the stockholder proposals presented at the Annual Meeting. Instead, SRFC prepared, reviewed, approved and/or permitted the use of only a definitive proxy statement for the Annual Meeting, a clear violation of SEC rules.

10. The errors were objective and readily ascertainable. The governing statute supplied the voting threshold; Twin Vee's SEC filings supplied the number of outstanding shares and the number of affirmative votes; simple arithmetic demonstrated that the proposal had failed by more than 680,000 votes; and the SEC rules clearly state the requirement for a preliminary proxy statement that is filed no later than ten calendar days before definitive materials are first sent or given to security holders.

11. Acting in reliance upon SRFC's legal advice and work, Twin Vee filed only a definitive proxy statement rather than the required preliminary proxy statement and, following the Annual Meeting, filed documents purporting to effect the conversion, publicly reported that it had become a Nevada corporation, and conducted its corporate affairs on that basis until SRFC's errors were discovered.

12. The attempted conversion was ineffective. Twin Vee remained a Delaware corporation, as Twin Vee later acknowledged in corrective SEC filings.

13. SRFC's error did not remain confined to a single corporate filing. It propagated through Twin Vee's corporate governance, capitalization, securities issuances, SEC filings,

Nasdaq compliance, financing activities, and a pending strategic merger with USFM Corporation ("USFM").

14. Among other consequences, Twin Vee purported to implement a 1-for-37 reverse stock split effective May 4, 2026 in reliance upon Nevada law, which permits a reverse stock split with only Board of Directors approval, and without obtaining the stockholder approval required under Delaware law, which was the applicable law at the time of the reverse stock split because Twin Vee remained a Delaware corporation.

15. The reverse split was undertaken for an important regulatory purpose: Twin Vee had received notice from Nasdaq that it no longer satisfied the $1.00 minimum bid-price requirement, was not eligible for the ordinary 180-day compliance period because of a prior reverse split, and faced delisting absent relief from a Nasdaq Hearings Panel. Twin Vee specifically identified another reverse split as an available means to regain compliance.

16. Twin Vee thereafter relied upon the 1-for-37 split in its Nasdaq compliance process and reported what it thought at the time to be an effective Nevada conversion at a hearing before the Nasdaq Hearings Panel. Based in part on representations made by Twin Vee to the Nasdaq Hearings Panel, Nasdaq found Twin Vee in compliance on June 17, 2026 and refrained from delisting Twin Vee's common stock from Nasdaq, before Twin Vee discovered that the reincorporation was defective and that the reverse split had not been validly authorized under Delaware law.

17. Twin Vee has been required to undertake an extensive corrective process, including corrective Delaware and Nevada filings, statutory ratification procedures under DGCL Section 204, additional proxy materials and stockholder solicitation (including calling, noticing, and convening a special meeting of stockholders on September 8, 2026), review and remediation

of affected stock issuances, warrant exercises and equity awards, capitalization review, coordination with its transfer agent, SEC corrective work, Nasdaq-related work, and substantial work by replacement corporate, securities, transaction, and Delaware and Nevada special counsel, each of whom were engaged solely for purposes of the corrective process.

18. SRFC's errors also materially affected Twin Vee's pending merger with USFM.

19. On July 12, 2026, Twin Vee entered into an Agreement and Plan of Merger ("USFM Merger Agreement") with USFM and USFM Merger Sub Inc. The USFM Merger Agreement identified Twin Vee as a Nevada corporation and contemplated a merger structured on that premise (the "USFM Merger").

20. In Section 4.1 of the USFM Merger Agreement, Twin Vee expressly represented and warranted to USFM that Twin Vee was a corporation duly incorporated, validly existing, and in good standing under Nevada law.

21. That representation was false when made because the purported Delaware-to-Nevada conversion had never been validly authorized.

22. The accuracy of the Section 4.1 organization representation is an express condition to USFM's obligation to consummate the USFM Merger, and the USFM Merger Agreement permits termination for specified uncured breaches and, subject to its terms, if closing does not occur by October 31, 2026.

23. The same corporate-status error affected the statutory structure of the contemplated transaction, Twin Vee's governing documents and capitalization representations, and the pre-closing restructuring and securities mechanics required by the USFM Merger Agreement. As described below, discovery that Twin Vee remained a Delaware corporation has

required the parties to revise the merger structure and transaction documents at least insofar as necessary to implement the merger with Twin Vee under Delaware rather than Nevada law.

24. Twin Vee has already incurred substantial professional fees and other remediation and transaction expenses, and its damages continue to accrue as the corrective and USFM Merger processes proceed.

25. Twin Vee has also been exposed to third-party claims and transaction demands arising from the inaccurate representations in the USFM Merger Agreement (including the corporate status and capitalization representations), the resulting delay to process the legally required ratification of the defective corporate acts related to the attempted conversion, the need to revise the transaction structure and disclosures, and alleged financing impairment. USFM has asserted claims arising from those matters, and Twin Vee presently expects USFM to seek damages of approximately $7 million to $8 million. Twin Vee does not concede the validity or amount of those asserted damages. Twin Vee also faces potential stockholder, securities, and regulatory claims or proceedings arising from the corporate and disclosure problems described herein, including potential claims associated with inaccurate information disclosed to the Nasdaq Hearings Panel in connection with the potential delisting of Twin Vee's common stock. Twin Vee's August 2026 SEC filings specifically disclosed the risk of claims by USFM and material adverse consequences resulting from the defective corporate acts.

26. Those injuries were natural and foreseeable consequences of SRFC's failure to correctly identify and apply the governing corporate law and advise a Nasdaq-listed public company concerning its corporate status.

27. Had SRFC exercised the ordinary reasonable skill and knowledge required of counsel, Twin Vee would not have reported that an unsuccessful stockholder vote had approved

the conversion, would not have purported to convert to Nevada without the required approval, would not have undertaken subsequent corporate acts in reliance upon an erroneous Nevada status, would not have relied upon a defective reverse split in its Nasdaq compliance process, and would not have entered the USFM Merger Agreement on the false premise that Twin Vee was a Nevada corporation.

**PARTIES**

28. Plaintiff Twin Vee PowerCats Co. is a corporation organized under the laws of the State of Delaware.

29. Twin Vee maintains its principal place of business in Fort Pierce, Florida.

30. Twin Vee is therefore a citizen of Delaware and Florida for purposes of 28 U.S.C. § 1332.

31. Defendant Sichenzia Ross Ference Carmel LLP is a limited liability partnership engaged in the practice of law and maintains its principal office in New York, New York.

32. For purposes of diversity jurisdiction, an LLP is a citizen of each state in which any of its members is a citizen.

33. Upon information and belief, SRFC's members are citizens of states other than Delaware and Florida.

34. Based upon Twin Vee's reasonable investigation of publicly available information, Twin Vee is not aware of any SRFC member who is a citizen of either Delaware or Florida.

35. Accordingly, upon information and belief, SRFC is not a citizen of Delaware or Florida for purposes of 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

36. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

37. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because SRFC resides in and conducts substantial business within this District and a substantial part of the events and omissions giving rise to the claims occurred within this District.

## FACTUAL ALLEGATIONS

### A. SRFC's Representation of Twin Vee

38. Twin Vee retained SRFC to serve as corporate and securities counsel.

39. Among other matters, SRFC undertook responsibility for advising Twin Vee and its officers and board of directors concerning the legal requirements governing conversion from Delaware to Nevada; the stockholder vote required under Delaware law; preparation and filing of proxy materials; determination of whether the conversion proposal obtained the required vote; SEC filings concerning the proposed and purported conversion; preparation and filing of documents purporting to effect the conversion; Twin Vee's corporate status following those filings; Twin Vee's authority to conduct subsequent corporate actions under Nevada law; the validity of Twin Vee's reverse stock split and capitalization; the accuracy of public disclosures concerning Twin Vee's state of incorporation and governing law; and the accuracy of representations Twin Vee makes to regulatory agencies and securities exchanges including, without limitation, Nasdaq.

40. Those matters were fundamental corporate and securities-law matters within SRFC's professional engagement.

**B. SRFC Applied the Wrong Delaware Voting Standard**

41. Twin Vee proposed converting from Delaware to Nevada at its December 4, 2025 annual meeting.

42. Delaware law required the affirmative vote of a majority of the outstanding shares entitled to vote.

43. Twin Vee had 2,237,299 outstanding shares, requiring 1,118,650 affirmative votes.

44. Only 437,309 shares voted in favor.

45. The conversion proposal therefore failed.

46. SRFC nevertheless advised or permitted Twin Vee to report that the proposal had passed, and Twin Vee's December 8, 2025 Form 8-K affirmatively reported that stockholders had approved the Nevada reincorporation.

47. The proxy materials prepared or reviewed by SRFC also misstated the statutory standard by stating that approval depended upon a majority of shares present or represented at the meeting rather than a majority of all outstanding shares entitled to vote.

48. The error involved a straightforward and fundamental application of the statute governing the matters SRFC had been retained to advise upon. Section 266(b) of the DGCL established an express and objectively ascertainable voting requirement. Determining whether that requirement had been satisfied required identifying the statutory threshold and comparing it with the reported voting results.

49. The voting results demonstrated on their face that the required approval had not been obtained. No exercise of professional judgment concerning unsettled law was necessary to determine that 437,309 affirmative votes were less than the 1,118,650 affirmative votes required.

50. Competent corporate and securities counsel advising a public Delaware corporation on a statutory conversion should have identified the applicable statutory voting threshold, accurately stated it in the proxy materials, compared the vote results to that threshold, advised Twin Vee that the proposal had failed, and caused the Form 8-K and other public disclosures regarding the vote to clearly state that the proposal was not passed by the Twin Vee stockholders.

51. On February 3, 2026, before Twin Vee consummated the conversion but after the Annual Meeting concluded and the voting results were publicly disclosed, Benjamin P. Edwards, Associate Dean for Faculty Research and Development at the William S. Boyd School of Law at the University of Nevada, Las Vegas, published an article on the Business Law Prof Blog questioning Twin Vee's reported approval of the reincorporation. Based solely on Twin Vee's publicly reported vote totals, Edwards observed that a majority of the outstanding shares had not voted in favor as Delaware law required and identified the December 8, 2025 Form 8-K's statement that the proposal had passed as puzzling. The defect was thus publicly identifiable from Twin Vee's own filings more than two months before Twin Vee filed documents with the Delaware and Nevada Secretaries of State purporting to effect the Nevada conversion.

**C. Twin Vee Relied on SRFC and Purported to Become a Nevada Corporation**

52. In reliance upon SRFC's advice and legal work, and on the premise that the December 4, 2025 stockholder vote had validly authorized the conversion, Twin Vee proceeded to make state filings purporting to convert Twin Vee from Delaware to Nevada.

53. Specifically, on or about April 7, 2026, Twin Vee filed a Certificate of Conversion with the Secretary of State of the State of Delaware and on or about April 9, 2026, Twin Vee filed Articles of Conversion/Exchange/Merger and Articles of Incorporation with the Secretary of State of the State of Nevada. Each of those filings rested on the premise that the

conversion had received the stockholder approval required by Delaware law. That premise was false.

54. Twin Vee thereafter made SEC filings and other public disclosures identifying itself as a Nevada corporation and conducted corporate affairs on that basis. Twin Vee's April 30, 2026 Current Report on Form 8-K filed with the SEC reported the filing of an amendment to its articles of incorporation, implementing its 1-for-37 reverse stock split with only Board approval (and without stockholder approval). Its May 7, 2026 Form 10-Q likewise treated the Nevada reincorporation as completed. And on May 7, 2026, Twin Vee appeared before the Nasdaq Hearings Panel and, among other things, certified to Nasdaq that its reverse stock split had been validly implemented.

55. Because the required stockholder approval had never been obtained, the conversion was ineffective and Twin Vee remained a Delaware corporation.

56. By August 4, 2026, Twin Vee had discovered the defect and filed corrective documents in both Delaware and Nevada to revoke or nullify the defective conversion filings. Twin Vee's August 4 Form 8-K expressly acknowledged that Twin Vee "did not effectively reincorporate to Nevada."

57. The error had by then appeared in multiple SEC filings and had become embedded in Twin Vee's corporate governance, capitalization, exchange-listing position, and transaction documents.

**D. The Defective Reverse Stock Split and Nasdaq Consequences**

58. On April 2, 2026, Nasdaq notified Twin Vee that it no longer satisfied the $1.00 minimum bid-price requirement for continued listing on the Nasdaq Capital Market.

59. Because Twin Vee had effected a 1-for-10 reverse split in April 2025, Nasdaq advised Twin Vee that it was not eligible for the ordinary 180-day compliance period and that its

securities would be subject to delisting unless Twin Vee timely sought a hearing before the Nasdaq Hearings Panel.

60. Twin Vee sought a hearing, which was scheduled for May 7, 2026, and considered another reverse split as a means to regain compliance.

61. On April 10, 2026, Twin Vee's Board approved the 1-for-37 reverse stock split by unanimous written consent. Because Twin Vee believed it had become a Nevada corporation, it relied upon NRS § 78.207, under which the Board, without shareholder approval, could effect the split by a proportionate decrease in the authorized and issued and outstanding shares of the applicable class. In reliance on its purported Nevada status and the applicability of NRS § 78.207, Twin Vee did not seek separate stockholder approval. On April 30, 2026, Twin Vee filed a Certificate of Change in Nevada purporting to implement the split effective May 4, 2026.

62. Twin Vee's common stock began trading on a split-adjusted basis on May 4, 2026, and Twin Vee thereafter reflected the split throughout its share counts, capitalization and other public disclosures, warrants, equity awards, and financial reporting.

63. On June 17, 2026, the Nasdaq Hearings Panel found Twin Vee in compliance with Nasdaq's listing rules and, consequently, Twin Vee's common stock continued trading on Nasdaq.

64. Because Twin Vee remained a Delaware corporation at all relevant times, however, Delaware law governed the reverse split, and the board-only action taken in reliance upon Nevada law without stockholder approval was a defective corporate act requiring corrective action and stockholder ratification.

65. Twin Vee avoided delisting in part based on assertions made to Nasdaq that it had legally converted into a Nevada corporation and subsequently legally consummated the reverse split.

66. SRFC's errors therefore placed Twin Vee in the position of having relied upon a defectively authorized corporate act in a regulatory process concerning the continued listing of its publicly traded securities, during which Twin Vee's senior executive officers made material representations to the Nasdaq Hearings Panel that, in hindsight, rested on an erroneous premise concerning Twin Vee's state of incorporation and the validity of the reverse split.

67. Twin Vee has been required to address the validity of the split, demonstrate and complete corrective measures, and incur professional and management time, attention and costs addressing exchange-related issues that would not have existed had the conversion vote and corporate status been correctly determined at the outset. Such corrective measures have also diverted the attention of Twin Vee's management during a critical phase in the company's life cycle (i.e., the pending USFM Merger).

**E. Capitalization, Securities, and Corrective Corporate Acts**

68. The defective reverse split affected more than the nominal number of outstanding shares. Twin Vee's post-split share counts, capitalization records, warrants, options, equity grants, transfer-agent records, voting rights, ownership percentages, and subsequent public disclosures all depended upon the validity of the attempted Nevada conversion and subsequent attempted reverse stock split.

69. Twin Vee's August 2026 SEC filings warned that, absent effective ratification, issuances of common stock, warrants, options, and other equity grants after the reverse split might not be valid, Twin Vee's outstanding shares could be required to revert to pre-split

numbers, and Twin Vee might be unable to validate its capitalization for strategic or capital-raising transactions.

70. The August 17, 2026 proxy statement further disclosed that 12,813 shares issued after the defective corporate acts were being treated as potentially "putative stock" for purposes of determining voting eligibility on the ratification proposal.

71. Twin Vee has consequently been required to identify affected corporate acts and securities; determine the applicable Delaware authorization requirements; obtain corrective Board action; prepare and file preliminary and definitive proxy materials; call and convene a special meeting of stockholders on September 8, 2026; determine that 12,813 shares issued after the defective corporate acts may constitute "putative stock" ineligible to vote on the ratification proposal or count toward quorum; solicit the stockholder approval required under DGCL §§ 204 and 242(d)(2); coordinate with its transfer agent and other professionals; engage a third party proxy solicitor to assist in generating stockholder interest to ensure a sufficient quorum appeared at the September 8, 2026 special meeting of stockholders in person or by proxy; and prepare and file the Delaware validation filings required to complete the cure.

72. On August 4, 2026, Twin Vee's Board ratified the reverse split and approved submission of the ratification proposal to stockholders under DGCL § 204. Because the stockholders ultimately approved the ratification, Twin Vee filed a Certificate of Validation with the Delaware Secretary of State, together with a Certificate of Amendment to its Delaware certificate of incorporation giving effect to the 1-for-37 reverse split under Delaware law, on September 8, 2026. Pursuant to applicable Delaware law, the reverse split is validated retroactively as of 12:01 a.m. Eastern Time on May 4, 2026. However, in accordance with Delaware law, a claim that the reverse stock split is void or voidable due to the failure to receive

the requisite stockholder approval with respect to the reverse stock split or a declaration by the Delaware Court of Chancery, in its discretion, that the reverse stock split is not effective or is effective only on certain conditions, may be brought within 120 days after the later of the validation effective time and the giving of any notice required by DGCL § 204, subject to the exceptions set forth in the statute. Therefore, Twin Vee remains exposed to potential adverse stockholder or Delaware Court of Chancery actions, likely through January 6, 2027.

73. Successful ratification may cure specified defective corporate acts retroactively, but it does not eliminate the professional fees, filing costs, proxy-solicitation expenses, transaction costs, management burden, and third-party exposure incurred because the corrective process became necessary.

**F. Effect on the USFM Merger**

74. Twin Vee entered into the USFM Merger Agreement on July 12, 2026.

75. The USFM Merger Agreement identified Twin Vee as a Nevada corporation, and Section 4.1 of the USFM Merger Agreement includes a representation that Twin Vee was duly incorporated, validly existing, and in good standing under Nevada law and that its governing documents were true, correct, complete, and in full force and effect. Section 4.6 of the USFM Merger Agreement included equity capitalization representations which assumed that the reverse stock split was legally valid.

76. Those representations and several other representations and statements in the USFM Merger Agreement were inaccurate when made because the Delaware-to-Nevada conversion had not been validly authorized.

77. Section 9.2(a)(i) of the USFM Merger Agreement makes the accuracy of the Section 4.1 organization representations an express condition to USFM's obligation to close the transactions contemplated by the USFM Merger Agreement.

78. The USFM Merger Agreement also contains Twin Vee capitalization representations and contemplates the conversion or treatment of Twin Vee shares, warrants, and other securities at closing, making a reliable determination of Twin Vee's capitalization material to the transaction.

79. The original USFM Merger Agreement contemplated a single reverse triangular merger under Nevada law: USFM's Nevada-incorporated merger subsidiary would merge with and into Twin Vee, which the agreement incorrectly identified as a Nevada corporation, with Twin Vee surviving. After discovery that Twin Vee remained a Delaware corporation, the parties have undertaken to revise that structure. The revised merger plan is expected to involve the merger of a Delaware-incorporated merger subsidiary ("Merger Sub I") with and into Twin Vee under the DGCL, with Twin Vee surviving. The need to revise the Twin Vee side of the merger from a Nevada-law merger to a Delaware-law merger directly resulted from discovery that Twin Vee had never left Delaware.

80. The discovery that Twin Vee remained a Delaware corporation therefore required additional transaction analysis, drafting, disclosure, coordination, and corrective work before the USFM Merger could proceed on a legally accurate basis, including revising the Twin Vee merger mechanics to proceed under Delaware law rather than Nevada law and replacing the Nevada merger subsidiary intended to merge into Twin Vee with a Delaware merger subsidiary.

81. The USFM Merger Agreement provides, subject to its terms, for an October 31, 2026 end date and a limited cure period for certain curable Twin Vee breaches. The corrective process has consumed material time within the contractual transaction period.

82. As disclosed in Twin Vee's August 6, 2026 Form 10-Q, the DGCL Section 204 ratification required due to the defective reincorporation has compounded uncertainty

surrounding completion of the USFM Merger and could adversely affect Twin Vee's relationships with financing sources and other business partners.

83. The July 12, 2026 USFM Merger Agreement contains inaccurate representations concerning Twin Vee's state of incorporation and was structured on the erroneous premise that Twin Vee was a Nevada corporation. The parties have undertaken to negotiate an amended and restated merger agreement that, among other things, would conform the Twin Vee merger mechanics and related provisions to Twin Vee's actual Delaware status. The negotiation of a proposed amendment does not itself eliminate the professional fees, transaction costs, delay, or third-party claims already arising from the corporate-status error, and, unless and until the relevant contractual issues are resolved by effective amendment, waiver, closing, or otherwise, Twin Vee remains exposed to claims arising from the inaccurate representations and resulting transaction consequences.

84. USFM has since asserted claims against Twin Vee arising from the defective reincorporation and resulting transaction delay, including alleged financing losses. USFM has asserted to Twin Vee that its damages are approximately $7 million to $8 million. Twin Vee does not concede the validity or amount of those asserted damages, but SRFC's malpractice has exposed Twin Vee to a substantial third-party claim that would not otherwise have existed. Twin Vee has been required to respond to that claim while continuing to attempt to preserve the USFM Merger and mitigate the consequences of SRFC's errors.

85. Those transaction-related consequences were a natural and foreseeable result of erroneously advising a public company that it had changed its state of incorporation and permitting it to enter a material merger agreement containing inaccurate representations concerning that status.

**G. Market Reaction to the USFM Merger and Resulting Stockholder-Litigation Exposure**

86. Twin Vee entered into the USFM Merger Agreement with the expectation that the USFM Merger would enhance the value of Twin Vee's common stock and thereby enhance the value of its stockholders' investment.

87. The initial market reaction to the announced USFM Merger was consistent with that expectation. Twin Vee's common stock closed at $4.82 per share on July 10, 2026, the last trading day before public announcement of the USFM Merger. Following announcement of the USFM Merger, the market price increased substantially. The shares traded as high as $55.49 on July 17, 2026 and closed that day at $38.70 per share. As of September 4, 2026, the shares closed at $9.90 per share, more than twice the July 10, 2026 closing price.

88. Twin Vee retained SRFC as corporate and securities counsel precisely to ensure, among other things, that material corporate actions were validly authorized, that the Company's legal status was correctly determined, and that its SEC filings and other public disclosures accurately described those matters. Twin Vee relied upon SRFC's professional advice in taking those actions and making those disclosures.

89. Market participants purchasing or selling Twin Vee securities did so against the background of the Company's public disclosures concerning, among other matters, its state of incorporation, the validity of its corporate actions and capitalization, its Nasdaq compliance, and the pending USFM Merger. SRFC's malpractice created the risk that some investors traded before the August 4, 2026 corrective disclosure while those public disclosures rested upon an erroneous understanding of Twin Vee's legal status and the validity of the reverse stock split.

90. Twin Vee does not allege or concede in this action that any present or future stockholder, securities, derivative, Delaware Court of Chancery, or fiduciary-duty claim arising from those circumstances is meritorious, that any particular investor relied upon any particular

statement, or that any particular decline in Twin Vee's stock price was caused by the defective reincorporation, the defective reverse stock split, or the corrective actions.

91. Nor does Twin Vee concede that USFM or any stockholder suffered legally cognizable damages. The market price of Twin Vee's common stock was highly volatile following announcement of the USFM Merger, and a substantial portion of the decline from the post-announcement trading highs occurred before the Company's August 4, 2026 corrective disclosure. Twin Vee therefore does not attribute the entire decline from those trading highs to the corporate defects or their subsequent disclosure.

92. Nevertheless, the combination of substantial trading in Twin Vee securities at elevated prices, subsequent price declines, and the later disclosure that prior SEC filings and corporate actions rested upon an erroneous legal premise presents the type of circumstances in which plaintiffs' firms may assert stockholder, securities, derivative, fiduciary-duty, disclosure, or related claims against a public company and its officers and directors.

93. The resulting exposure is itself a foreseeable consequence of SRFC's malpractice. Twin Vee engaged and relied upon specialized corporate and securities counsel in substantial part to avoid precisely the risk that invalid corporate acts or inaccurate public disclosures would expose the Company and its fiduciaries to claims by investors. Because SRFC's advice was erroneous, Twin Vee now faces the risk and expense of defending claims premised upon the corporate and disclosure problems created by that advice, irrespective of whether any such claims ultimately prove meritorious.

**H. Exposure to Stockholder, Securities, and Regulatory Claims**

94. The corporate defects caused by SRFC's malpractice also create a material risk of claims against Twin Vee itself, as well as against its current and former officers and directors, arising from, among other matters, the ineffective Delaware-to-Nevada conversion, the defective

reverse stock split, the resulting Nasdaq listing issues, the accuracy of related SEC filings and other public disclosures, and the validity of corporate and securities actions taken in reliance on the purported conversion and reverse split.

95. Twin Vee itself may face claims by stockholders or purchasers or sellers of its securities based on allegedly false or misleading SEC filings or other public disclosures, as well as claims concerning the defective corporate acts and securities affected by them. Twin Vee also faces potential SEC, Nasdaq, Delaware Court of Chancery, or other legal or regulatory inquiry or action arising from the same matters. No such private action or regulatory proceeding concerning the matters alleged herein has yet been filed or commenced, and Twin Vee does not concede that any such claim or proceeding would have merit.

96. Such litigation could also name Twin Vee's current or former officers and directors and could include derivative, fiduciary-duty, securities, disclosure, or other claims arising from the matters alleged herein. Twin Vee has advancement and indemnification obligations to applicable officers and directors, including obligations arising under indemnification agreements and Twin Vee's charter documents. If litigation is commenced against covered officers or directors, Twin Vee may be required to advance substantial defense costs and, to the extent applicable, indemnify those individuals for covered losses and expenses incurred in such litigation, in addition to costs or exposure borne directly by Twin Vee.

97. The risk of stockholder and securities litigation or regulatory inquiry or action, and the reasonable costs and expenses that Twin Vee may incur in defending or responding to such matters or satisfying applicable advancement and indemnification obligations, are natural and foreseeable consequences of the corporate, securities, disclosure, and Nasdaq problems created by SRFC's malpractice.

**I. Twin Vee's Damages**

98. Twin Vee has suffered actual and ascertainable damages, and additional damages continue to accrue.

99. First, Twin Vee has incurred and continues to incur fees and expenses for replacement corporate and securities counsel, Delaware and Nevada counsel, transaction counsel, accountants, auditors, proxy advisers and solicitors, transfer agents, filing and printing services, capitalization review, financial advisors, and other professionals retained to investigate, contain, correct, and remediate the consequences of SRFC's errors.

100. Those remediation costs include, without limitation, the costs of preparing and filing corrective documents in Delaware and Nevada; analyzing the legal effect of the defective conversion and reverse split; preparing Board materials and ratification resolutions; implementing the DGCL § 204 process; preparing and filing preliminary and definitive proxy materials; calling and conducting the September 8, 2026 special meeting; determining the voting treatment of potentially putative stock; soliciting stockholder approval; coordinating with the transfer agent and other professionals; and preparing and filing the Certificate of Validation and related Certificate of Amendment necessary to validate the reverse split retroactively under Delaware law.

101. Second, Twin Vee has incurred costs and expenses reviewing and correcting capitalization and securities matters affected by the defective reverse split, including issued and outstanding shares, authorized shares, stock issuances, warrant exercises and exercise prices, equity awards, transfer-agent and book-entry records, voting rights, ownership percentages, and related public disclosures.

102. Third, Twin Vee has incurred and will continue to incur SEC, accounting, audit, disclosure-control, financial-reporting, and related professional costs in determining whether and

how its public filings and capitalization disclosures must be corrected, supplemented, or otherwise addressed.

103. Fourth, Twin Vee has incurred Nasdaq-related costs and exposure arising from the need to address the fact that the reverse split used to regain compliance was implemented on an erroneous Nevada-law premise. Twin Vee publicly disclosed that it avoided delisting in part based on assertions that it had legally consummated that split.

104. Fifth, Twin Vee has incurred incremental merger-related fees and expenses because the USFM transaction was negotiated and documented on the false premise that Twin Vee was a Nevada corporation. The corrective work has required additional legal analysis, drafting, disclosure, coordination, and negotiation with USFM and transaction professionals, including revising the Twin Vee side of the merger from a Nevada-law merger to a Delaware-law merger and revising related representations and transaction documents.

105. Sixth, Twin Vee has suffered and continues to suffer delay damages arising from the postponement of the USFM Merger caused by the need to remediate the defective reverse stock split and related Nasdaq issues. The amount of such delay damages remains to be ascertained and will be established through discovery or at trial.

106. Seventh, Twin Vee has been exposed to claims and demands by USFM and potentially other third parties arising from the false corporate-status and equity capitalization representations, the resulting transaction delay, the need for corrective action, and alleged financing impairment. USFM has asserted damages of approximately $7 million to $8 million. Twin Vee does not concede the validity or amount of that claim, but seeks to recover all amounts reasonably incurred in responding to, mitigating, defending, or resolving it to the extent proximately caused by SRFC's malpractice.

107. Eighth, Twin Vee faces potentially substantial exposure arising from the risk of stockholder and securities claims and regulatory inquiries or proceedings concerning the corporate, securities, disclosure, and Nasdaq issues described above. Such exposure includes the costs of defending or responding to such claims or proceedings and the costs of advancing or indemnifying covered defense costs and other losses of current or former officers and directors pursuant to applicable indemnification obligations. In addition, under Delaware law, Twin Vee faces risks of invalidation of the corrective actions by stockholders or the Delaware Court of Chancery until January 6, 2027. No such private action or regulatory proceeding concerning the matters alleged herein has yet been filed or commenced, and Twin Vee does not concede that any such claim would have merit or that any claimant could establish legally cognizable damages. To the extent Twin Vee incurs costs, expenses, or liabilities arising from such matters, their amount is not yet ascertainable.

108. Ninth, the defective corporate acts have impaired and threatened Twin Vee's ability to use its securities and capitalization confidently in financing and strategic transactions. Twin Vee's August 2026 SEC filings expressly warned that ineffective ratification could impair capital-raising transactions and relationships with financing sources.

109. The consequences of financing impairment are particularly material because Twin Vee depends upon external capital. During the first quarter of 2026, Twin Vee completed three equity offerings generating net proceeds of approximately $5.8 million; at June 30, 2026, it reported approximately $3.93 million in cash, cash equivalents and restricted cash, a six-month net loss of approximately $4.99 million, and substantial doubt about its ability to continue as a going concern.

110. Twin Vee does not allege that SRFC caused its pre-existing operating losses or liquidity condition. Rather, those publicly reported circumstances demonstrate the materiality and foreseeability of imposing unplanned remediation costs, transaction delay, third-party claims, and financing impairment upon a company for which continued access to capital was important.

111. Tenth, Twin Vee has suffered management disruption and diversion. Officers, directors, and employees have been required to devote substantial time to correcting corporate records, coordinating with counsel and other professionals, addressing Nasdaq and SEC issues, reviewing capitalization, conducting the ratification process, and trying to salvage the USFM Merger.

112. Twin Vee has acted promptly to mitigate its damages after discovering the defect, including by filing corrective instruments on August 4, 2026, initiating the DGCL § 204 ratification process, and soliciting and obtaining stockholder approval.

113. Those mitigation efforts do not eliminate the damages caused by SRFC. The need to undertake them, and the reasonable costs incurred in doing so, are themselves consequences of the malpractice.

114. Twin Vee's damages are not yet fully ascertainable because the transaction process, the statutory period for challenges following ratification, third-party, stockholder, securities, and regulatory claims or proceedings, and related remediation remain ongoing or contingent.

115. Twin Vee seeks all damages proximately caused by SRFC's malpractice, including reasonable investigation and remediation costs and expenses; incremental SEC, Nasdaq, accounting, audit, proxy, transfer-agent, and capitalization costs and expenses;

additional merger and transaction costs and expenses; amounts reasonably incurred to defend, respond to, or resolve third-party, stockholder, securities, or regulatory claims or proceedings caused by SRFC's conduct; financing and delay damages to the extent proven with reasonable certainty; and all other recoverable consequential damages.

**COUNT I**

**LEGAL MALPRACTICE / PROFESSIONAL NEGLIGENCE**

116. Twin Vee repeats and realleges paragraphs 1 through 115 as though fully set forth herein.

117. An attorney-client relationship existed between Twin Vee and SRFC.

118. SRFC owed Twin Vee a duty to exercise the ordinary reasonable skill and knowledge commonly possessed by attorneys practicing corporate and securities law under similar circumstances.

119. SRFC breached that duty by, among other things, failing correctly to identify and apply the stockholder voting requirement governing the proposed Delaware-to-Nevada conversion; preparing, reviewing, approving, or permitting proxy disclosures that misstated the applicable voting requirement; preparing, reviewing, approving, or permitting a definitive proxy statement to be filed without a corresponding preliminary proxy statement, in violation of clear SEC rules; failing correctly to determine that the conversion proposal had not obtained the required stockholder approval; advising or permitting Twin Vee to report that the proposal had passed; preparing, reviewing, approving, or permitting corporate and public filings premised upon an ineffective conversion; incorrectly advising or permitting Twin Vee to act as though it were a Nevada corporation; failing to recognize that Delaware law continued to govern Twin Vee and its subsequent corporate actions; advising, preparing, or permitting the 1-for-37 reverse split and related actions on the erroneous premise that Nevada law governed; permitting Twin

Vee to rely upon the defective split in its Nasdaq compliance process; failing timely to identify, disclose, and correct the corporate-status error before it propagated into Twin Vee's SEC filings, capitalization, financing, and pending merger; and otherwise failing to exercise the ordinary skill and knowledge required of competent corporate and securities counsel.

120. The central voting error was not the product of a reasonable professional judgment on an unsettled issue. The applicable statutory threshold and the reported voting results were objective, and the proposal's failure was readily ascertainable.

121. SRFC's breaches were a substantial and proximate cause of Twin Vee's injuries.

122. But for SRFC's negligence, Twin Vee would not have reported that the conversion was approved, would not have purported to become a Nevada corporation without legally sufficient stockholder authorization, would not have taken subsequent corporate actions in reliance upon Nevada law, would not have relied upon a defective reverse split to address Nasdaq compliance, and would not have executed the USFM Merger Agreement containing an inaccurate representation concerning its state of incorporation.

123. The need for corrective corporate acts, additional SEC and Nasdaq work, capitalization remediation, transaction restructuring, professional expenses, and exposure to stockholder, securities, regulatory, and other third-party claims was a direct and foreseeable consequence of SRFC's breaches.

124. Twin Vee has suffered actual and ascertainable damages as a direct and foreseeable result.

125. Twin Vee is entitled to recover those damages in an amount to be determined at trial.

**COUNT II**

**BREACH OF CONTRACT**

**(PLEADED IN THE ALTERNATIVE)**

126. Twin Vee repeats and realleges paragraphs 1 through 125 except to the extent inconsistent with this alternative claim.

127. Twin Vee retained SRFC pursuant to an agreement under which SRFC undertook to provide corporate and securities legal services to Twin Vee.

128. Twin Vee performed its obligations under the agreement, including payment of SRFC's fees and cooperation with SRFC in the representation.

129. To the extent SRFC's engagement imposed specific contractual obligations independent of the general professional duty of care, including specific undertakings concerning the conversion, proxy materials, corporate filings, corporate status, or other matters described above, SRFC failed to perform those obligations.

130. SRFC's failures constituted breaches of its contractual obligations to Twin Vee.

131. As a direct and foreseeable consequence of those breaches, Twin Vee suffered the damages described above.

132. Twin Vee pleads this claim in the alternative pursuant to Federal Rule of Civil Procedure 8(d) and does not seek duplicative recovery.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Twin Vee PowerCats Co. respectfully requests that judgment be entered in its favor and against Defendant Sichenzia Ross Ference Carmel LLP as follows:

A. awarding Twin Vee compensatory and consequential damages in an amount to be established at trial;

B. awarding Twin Vee all reasonable corrective and remediation expenses proximately caused by SRFC's malpractice;

C. awarding Twin Vee all incremental SEC, Nasdaq, accounting, audit, proxy, capitalization, transfer-agent, transaction, and financing-related damages proximately caused by SRFC's malpractice;

D. awarding damages for amounts reasonably incurred in defending, responding to, or resolving third-party, stockholder, securities, or regulatory claims or proceedings proximately caused by SRFC's conduct;

E. awarding pre-judgment and post-judgment interest as permitted by law;

F. awarding costs and disbursements to the extent permitted by law; and

G. granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Twin Vee demands a trial by jury on all issues so triable.

Dated: September 18, 2026
Chicago, Illinois

**RUBERRY STALMACK & GARVEY, LLC**
Attorneys for Plaintiff Twin Vee PowerCats Co.

By: /s/ Edward F. Ruberry__________
Edward F. Ruberry
300 South Wacker Drive, Suite 3250
Chicago, Illinois 60606
Telephone: (312) 466-8050
ed.ruberry@ruberry-law.com